UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NO. 3:21-CV-161-DJH

*Electronically Filed*

KENNETH WALKER III,                                                PLAINTIFF

v.

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, *et al.*                                         DEFENDANTS

---

MEMORANDUM IN SUPPORT OF THE
JOINT MOTION TO DISMISS FILED BY SGT.
JOHN MATTINGLY AND DET. MYLES COSGROVE

---

Table of Contents

Table of Authorities ....................................................................................................... iii

Introduction.....................................................................................................................1

Background ......................................................................................................................2

Argument ........................................................................................................................5

I.      WALKER'S SECTION 1983 CLAIMS FAIL AS NEITHER SGT. MATTINGLY, NOR
        DET. COSGROVE VIOLATED WALKER'S CONSTITUTIONAL RIGHTS, AND
        BECAUSE THEY ARE PROTECTED BY QUALIFIED IMMUNITY ...........................6

        A.      Sgt. Mattingly Was Not Responsible for Obtaining the Purportedly Improper
                Search Warrant, Nor Did He Violate Walker's Fourth Amendment Rights as It
                Relates to that Warrant Because It Was Supported By Probable Cause
                (Count I)...........................................................................................................7

                1.      Sgt. Mattingly Did Not Violate Walker's Constitutional Rights.................8

                2.      Even if Sgt. Mattingly Did Violate Walker's Constitutional Rights, He Is
                        Still Entitled to Qualified Immunity Because Those Rights Were Not
                        Clearly Established. ..................................................................................12

        B.      Neither Sgt. Mattingly Nor Det. Cosgrove Violated Walker's Clearly Established
                Fourth Amendment Rights When they Executed a Judicially Authorized No-
                Knock Search Warrant at Ms. Taylor's Home (Count II) ......................................12

        C.      Neither Sgt. Mattingly Nor Det. Cosgrove Violated Walker's Fourth Amendment
                Right to Be Free from Excessive Force (Count III)...............................................14

                1.      Sgt. Mattingly and Det. Cosgrove's Decisions Prior to Walker Firing His
                        Gun are Irrelevant to Walker's Excessive Force Claim...........................14

                2.      Neither Sgt. Mattingly, nor Det. Cosgrove Violated Walker's
                        Constitutional Rights In Returning Gunfire after Walker Shot Sgt.
                        Mattingly.................................................................................................15

                3.      Even if Walker Did Plead a Constitutional Violation, it was Not Clearly
                        Established that Officers Who Have Been Fired Upon (and Shot) Were
                        Not Entitled to Defend Themselves with Force.........................................17

II.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING
JURISDICTION OVER THIS LAWSUIT PURSUANT TO *COLORADO RIVER*, AS
WALKER HAS IMPROPERLY SPLIT HIS CAUSE OF ACTION IN BRINGING THIS
REPETETIVE FEDERAL SUIT ...........................................................................................18

    A.   The Court Should Dismiss or Stay Walker's Complaint Pursuant to the
*Colorado River* Abstention Doctrine ....................................................................18

        1.   This Case is Parallel to Walker's State Case ...........................................20

        2.   The *Colorado River* Factors Weigh in Favor of Federal Abstention.........20

Conclusion .........................................................................................................................24

Table of Authorities

CASES

*Abdur-Rahim v. City of Columbus, Ohio*, 825 Fed. Appx. 284 (6th Cir. 2020) ...........................12

*Anzalone v. Trent Gribble*, 2010 U.S. Dist. LEXIS 42366 (M.D. Tenn. Apr. 30, 2010) .............23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................6, 9

*Ashford v. Raby*, 951 F.3d 798 (6th Cir. 2020)..............................................................................12

*Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433 (6th Cir. 2006) .........................7

*Bates v. Van Buren Twp.*, 122 F. App'x 803 (6th Cir. 2004) ...........................................19, 21, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................6, 9

*Bouggess v. Mattingly*, 482 F.3d 886 (6th Cir. 2007)..........................................................7, 8, 14

*Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000)....................................................................15, 16

*Brandenburg. v. Cureton,* 882 F.2d 211 (6th Cir. 1989) ..............................................................15

*Chappell v. City Of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ...............................................14, 16

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) ................................................................15

*Colorado River Water Conservation v. United States*, 424 U.S. 800 (1976) ........18, 19, 20, 21, 23

*Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir. 1984).....................................19, 20

*Dickerson v. McClellan,* 101 F.3d 1151 (6th Cir.1996) ..............................................................15

*Estate of Sowards v. City of Trenton*, 125 Fed. Appx. 31 (6th Cir. 2005)...................................16

*Felder v. Casey,* 108 S. Ct. 2302 (1988)......................................................................................22

*Harding v. Apartment Inv. & Mgmt. Co.*, 2011 U.S. Dist. LEXIS 5557
   (W.D. Ky. Jan. 20, 2011) .............................................................................................21, 23

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................................................7

*Hoover v. Walsh*, 682 F.3d 481 (6th Cir. 2012).............................................................................7

*Illinois v. Gates*, 462 U.S. 213 (1983) ........................................................................................11

*Kent v. Oakland Cty.*, 810 F.3d 384 (6th Cir. 2016)..............................................................7

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)...........................................................................12

*Lane v. Pulaski Cty., Ky.*, 2014 WL 996293 (E.D. Ky. Mar. 13, 2014 .........................................6

*Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007)..............................................14

*Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981 (7th Cir. 2021) .......................................................16

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982)....................................................................6

*Maine v. Thiboutot*, 448 U.S. 1 n.1 (1980) ...........................................................................22

*Malley v. Briggs*, 475 U.S. 335 (1986) ...............................................................................11

*Martinez v. California*, 444 U.S. 277 n.7 (1980)....................................................................22

*Michalik v. Hermann,* 422 F.3d 252 (5th Cir. 2005) ...............................................................10

*Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004) .....................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...........................21, 22

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015)...................................................................16

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989)................................................................20

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP,*
     336 F.3d 495 (6th Cir. 2003) ..............................................................................................2

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) ..................................................19, 23

*Patsy v. Board of Regents*, 457 U.S. 496 (1982) .....................................................................22

*Preferred Care of Del., Inc. v. Vanarsdale*, 676 F. App'x 388 (6th Cir. 2017) .........................20

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)......................................................17

*Reich v. City of Elizabethtown*, Kentucky, 945 F.3d 968 (6th Cir. 2019) ...................................16

*Robinson v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005)............................................................16

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) ..............................19, 20. 21, 23

*Silberstein v. City of Dayton,* 440 F.3d 306 (6th Cir. 2006) .................................................7

*Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) ...........................5

*Thomson v. Salt Lake Cty.*, 584 F.3d 1304 (10th Cir. 2009) ........................................17

*Tlapanco v. Elges*, 969 F.3d 638 (6th Cir. 2020)...........................................................7

*Westmoreland v. Sutherland*, 662 F.3d 714 (6th Cir. 2011) ........................................6

*Wheeler v. City of Lansing*, 660 F.3d 931 (6th Cir. 2011)......................................10, 11

*White v. Pauly*, 137 S. Ct. 548 (2017) ........................................................................12

STATUTES

KRS 431.025 ..............................................................................................................4

KRS 503.085 ..............................................................................................................4

<u>Introduction</u>

Plaintiff, Kenneth Walker III (hereinafter, "Walker"), was staying at Ms. Breonna Taylor's apartment on Springfield Drive on the evening of March 12, 2020.  Sergeant John Mattingly and Detective Myles Cosgrove were assigned to a team tasked with executing a search warrant at Ms. Taylor's residence that same night.  Ms. Taylor was suspected of being involved with a drug trafficking ring in Louisville and was thought to have received suspicious packages as a part of the conspiracy.  Upon arriving at Springfield Drive, the Officers approached Ms. Taylor's door, knocked repeatedly, and announced themselves as police.[1]  They were so loud that at least one of Ms. Taylor's neighbors came out of his apartment to see what was going on. As consistent with their training, the Officers knocked and announced repeatedly, but nobody responded.  After nearly a minute with nobody coming to the door, the Officers forced entry. Walker was standing shoulder to shoulder with Ms. Taylor in the hallway, with no lights on, waiting with gun in hand.  As soon as the door opened, Walker fired a single shot from his pistol that struck Sgt. Mattingly in the upper thigh.  Immediately, after being fired upon, Sgt. Mattingly and Det. Cosgrove responded with gunfire.  Walker jumped out of the way and avoided being hit, but Ms. Taylor was struck and tragically killed.  Walker initially told police that Ms. Taylor had shot Sgt. Mattingly, but he later recanted and admitted he had fired the shot.

This case is not, however, about Breonna Taylor.[2] This suit is about Kenneth Walker— who sues in his own right for injuries he says that he sustained as a result of the events that transpired on Springfield Drive.[3]  As explained below, Sgt. Mattingly and Det. Cosgrove are

---

[1] As explained below in Section I (B), Officers were not required by law to knock or announce when executing the warrant.

[2] Louisville Metro has settled all claims against the estate of Breonna Taylor in a separate action, titled *Tamika Palmer v. Louisville Metro et. al.*, Case No. 20-CI-002694.

[3] As explained in more detail herein, Walker has improperly split his cause of action by filing a factually identical action in the Jefferson County Circuit Court.  (*See Am. Compl.* in *Walker v. Commonwealth of Kentucky, et al.*, Case No.20-CI-005086 (attached hereto as <u>Exhibit A</u>).

protected from suit by qualified immunity.  On top of that, Walker has improperly split his cause of action between state and federal courts.  Accordingly, the Court should dismiss the claims by Walker against Sgt. Mattingly and Det. Cosgrove at this time.

## Background

In March 2020, Louisville Metro Police Officers obtained "no-knock" search warrants on multiple homes in Louisville as part of an investigation into drug trafficking.  One of the locations they intended to search was an apartment occupied by Ms. Breonna Taylor on Springfield Drive.  Walker was staying at the apartment on the night the warrant was carried out. (Complaint, ¶ 45 (hereinafter, "Complaint, ¶_."))  He was not the target of the search warrant.

Walker now alleges that Defendant Officer Josh Jaynes misrepresented information related to packages in the affidavit provided in support of the warrant.  (Complaint, ¶ 18.)  The affidavit suggests that Jaynes had witnessed Jemarcus Glover leave Ms. Taylor's home with suspicious packages which he then took to a known drug house.  Jaynes also reported in that affidavit that a car belonging to Taylor had been seen on multiple occasions in front of an Elliott Avenue address associated with Glover.  (Affidavit in Support of Search Warrant, attached hereto as Exhibit B, hereinafter "Search Warrant.")[4]  A Jefferson Circuit Court Judge signed the "no-knock warrant" on March 12, 2020 and it authorized officers to enter and search Ms. Taylor's residence, a 2017 Dodge Charger, a 2016 Chevy Impala, and the persons of Jemarcus Glover, Adrian Walker, and Breonna Taylor.  (*See* Search Warrant.)  It further authorized the officers to seize illegal drugs, paraphernalia, monies that are proceeds from drug trafficking,

---

[4] The Court may take judicial notice of the Jaynes' Affidavit and the Executed Search Warrant for purposes of resolving this motion without converting it to a motion for summary judgment as it is a public record, and because it is referred to in, and central to, Walker's Complaint. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may

paperwork that may be a record of trafficking in narcotics, mail matter which might suggest financial activities related to drug trafficking, or any electronic media that might possess evidence of drug trafficking.  (*Id.*)

Officers met for a pre-operational briefing to coordinate and plan how to serve the warrants.  Notwithstanding the fact that the judge issued a "no-knock warrant" for Ms. Taylor's address, the Officers classified the apartment as a "Knock & Announce," rather than a "no-knock" location.  (Complaint, ¶ 39.)  In short, while not required to do so, Officers planned to provide Mr. Taylor with the opportunity to come to the door before breaching the apartment.

Officers arrived at Ms. Taylor's residence to execute the warrant in the early morning hours of March 13.  Unbeknownst to the Officers, Walker was staying at Ms. Taylor's apartment and was armed with a licensed firearm.  (*Id.*, ¶¶ 40, 50.)  In accordance with their plans, and notwithstanding the fact that they were not legally obligated to knock or announce, they did knock on Ms. Taylor's door several times.  (Complaint, ¶¶ 46, 50.)  While the officers did also announce on multiple occasions, Walker says he heard the knocking but did not understand who was at the door.  Walker was in bed, along with Ms. Taylor.  In response to the knocking, Ms. Taylor asked, 'who is it?', but heard no response.  (*Id.*, ¶¶ 46, 50.)  Ms. Taylor and Walker got up to get dressed and again asked "Who is it?"  (*Id.*, ¶¶ 46-47.)  Walker got his gun.  (*Id.*, ¶ 50.)

Walker and Ms. Taylor left the bedroom and were in the hallway, standing shoulder to shoulder.  According to Walker, the front door flew open in the darkness.  (*Id.*, ¶ 52.)  Walker fired a shot at the door.  (*Id.*, ¶ 52.)  This was the first gunshot that was fired, and it hit Sgt. Mattingly in his thigh.  (*Id.*, ¶¶ 52, 59.)  Having been fired at, and in the case of Mattingly struck, both Sgt. Mattingly and Det. Cosgrove returned gunfire.  (*Id.*, ¶¶ 52-53).  Ms. Taylor was

consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.")

standing in the hallway beside Mr. Walker when the gunfire erupted.  She was struck by the return fire.

Notwithstanding the fact that he purports not to have known the identities of those trying to make entry, Walker did not call the authorities immediately—instead, he called his mom who told him to call 911.  (*Id*., ¶ 56.)  He called Ms. Taylor's mother, too.  Nearly 15 minutes after it was reported that shots had been fired, and after having called his mom, 911 and Ms. Taylor's mom, Walker finally left the apartment to turn himself into police.  (*Id*., ¶ 58.)  Officers proceeded to cautiously enter the premises.  Sadly, Ms. Taylor had already succumbed to her injuries.

Walker was subsequently charged with murder, which was later amended down to attempted murder of a police officer after it was determined that Sergeant Mattingly would not die from his gunshot wound.  (Complaint, ¶ 61.)  The Commonwealth Attorney's Office later dismissed the action with prejudice.  (*Id*.)

Sgt. Mattingly and Det. Cosgrove were placed on administrative leave and their actions were investigated by the Kentucky Attorney General.  On September 23, 2020, it was announced that neither Mattingly nor Cosgrove would be indicted as their decision to return gunfire was justified under Kentucky Law.

Notwithstanding the fact that it was Walker who shot Sgt. Mattingly, Walker has now filed two lawsuits against Sgt. Mattingly and Det. Cosgrove.  The first lawsuit was filed in the Jefferson Circuit Court on September 1, 2020, and the Complaint has been amended twice.  In that action, Walker sues Sgt. Mattingly and Det. Cosgrove for (1) Assault; (2) Battery; (3) False Arrest and Imprisonment; (4) Malicious Prosecution; (5) Abuse of Process; (6) Statutory Violations of KRS 503.085 and KRS 431.025/Negligence Per Se; (7) General Negligence; and

(8) Intentional Infliction of Emotional Distress.  (*See* Ex. A.)  Each of these claims relate back to the Defendant Officers' decision to respond to Walker's gunshot with deadly force, and Walker's subsequent arrest for shooting Sgt. Mattingly.  Sgt. Mattingly and Det. Cosgrove have filed a motion to dismiss in that action which remains pending before the state court.

Apparently desiring to duplicate efforts and get two bites at the same apple, Walker has now filed this parallel federal proceeding wherein he alleges:

> (1) Unlawful Search – Illegal Warrant under the Fourth Amendment of the U.S. Constitution and 42 U.S.C. 1983 (COUNT I – AGAINST MATTINGLY);
>
> (2) Unlawful Search – Failure to Knock and Announce under the Fourth Amendment of the U.S. Constitution and 42 U.S.C. 1983 (COUNT 2 – AGAINST MATTINGLY AND COSGROVE);
>
> (3) Excessive Force under the Fourth Amendment of the U.S. Constitution and 42 U.S.C. 1983 (COUNT 3 – AGAINST MATTINGLY AND COSGROVE);

Each of these claims must be dismissed because Sgt. Mattingly and Det. Cosgrove are entitled to qualified immunity.  In the alternative, the Court should either dismiss or else stay this action in light of Walker's decision to improperly split his cause of action between state and federal courts.

<u>Argument</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint where it fails "to state a claim upon which relief can be granted."  "[T]o survive a 12(b)(6) motion, a complaint must contain (1) enough facts to state a claim to relief that is plausible, (2) more than a formulaic recitation of a cause of action's elements, and (3) allegations that suggest a right to relief above a speculative level." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal quotations omitted).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A plaintiff must allege facts stating a claim to relief that is "plausible on its face."  *Id.*; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In this case, even when one accepts all factual allegations as true, Walker has failed to state a plausible claim upon which relief may be granted.

I.      WALKER'S SECTION 1983 CLAIMS FAIL AS NEITHER SGT. MATTINGLY, NOR DET. COSGROVE VIOLATED WALKER'S CONSTITUTIONAL RIGHTS, AND BECAUSE THEY ARE PROTECTED BY QUALIFIED IMMUNITY.

Walker's claims against Sgt. Mattingly and Det. Cosgrove are brought under 42 U.S.C. § 1983, a statute which "does not create substantive rights but, rather, 'provides a remedy for deprivations of rights secured by the Constitution and laws of the United States....' " *Lane v. Pulaski Cty., Ky.*, 2014 WL 996293, at *3 (E.D. Ky. Mar. 13, 2014) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982)).  To recover under § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a right secured by the Constitution or by federal law.  *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011).

When a person sues a government official for such a constitutional deprivation under Section 1983, that government official is entitled to special protections.  The most significant protection is qualified immunity which "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.' " *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the defense of qualified immunity, the burden rests with the plaintiff to prove that the defendant cannot avail himself of it.  *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012) (citing *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006)).  To do so, the plaintiff must show that "(1) the defendant violated his constitutional or statutory rights and (2) the right at issue was sufficiently clear that a reasonable official would have understood that what he was doing violated that right." *Bouggess v. Mattingly*, 482 F.3d 886, 887 (6th Cir. 2007) (citing *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 438 (6th Cir. 2006) (*en banc*)).

A significant protection for government officials, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kent v. Oakland Cty*., 810 F.3d 384, 395 (6th Cir. 2016) (additional quotations and citations omitted).  As explained herein, neither Sgt. Mattingly or Det. Cosgrove acted incompetently, nor did they violate the law.  Quite to the contrary, they carried out their official duties in accordance with existing constitutional precedent.  As a result, they are protected by qualified immunity and entitled to the immediate dismissal of this suit.

> A.    Sgt. Mattingly Was Not Responsible for Obtaining the Purportedly Improper Search Warrant, Nor Did He Violate Walker's Fourth Amendment Rights as It Relates to that Warrant Because It Was Supported By Probable Cause (Count I).

In Count I, Walker alleges for the first time in his Complaint that Sgt. Mattingly "unreasonably and illegally approved, obtained and/or executed a search warrant that [he] knew was based on materially false, incorrect, inaccurate, incomplete and stale information."

(Complaint, ¶ 91.)  Walker alleges that the Shively Police Department advised Mattingly that "the US Postal Inspector had verified that the Postal Service did not have any boxes in their possession for Ms. Taylor's address, and that there were no boxes, suspicious or otherwise, that had been delivered from the post office to Ms. Taylor's address."  (*Id.,* ¶ 93.)  Walker alleges that:

> Mattingly nevertheless then conveyed to Defendant Jaynes that the US Postal Inspector had verified that a suspected drug trafficker was receiving packages at Ms. Taylor's home.  Mattingly conveyed this false statement knowing that Defendants Jaynes would swear and affirm to the truth of this statement as an affiant.  In so doing, Mattingly knowingly and intentionally breached his official duty to ensure that the issuing judge was presented with reliable and credible information.

(*Id.*, ¶ 93.)  As explained below, this Count fails for a number of reasons.

### 1.    Sgt. Mattingly Did Not Violate Walker's Constitutional Rights.

To overcome Sgt. Mattingly's qualified immunity, Walker must first show that Mattingly violated his constitutional rights.  *Bouggess v. Mattingly*, 482 F.3d 886, 887 (6th Cir. 2007).  He cannot do this for a myriad of reasons.

First, Walker fails to provide any plausible factual allegations to support this cause of action against Sgt. Mattingly.  Walker's allegations in Count I are notable because they are inconsistent with the factual predicate laid out earlier in Walker's own Complaint.  (*See* Complaint, ¶¶ 27-37.)  In a section titled *Defendants Obtain a Warrant for 3003 Springfield Drive, Unit 4, by Knowingly Making Materially False and Misleading Representations*, Walker notably omits any allegation that Sgt. Mattingly did knowingly provide false information in order to obtain the warrant.  He alleges, in part:

- "To obtain the search warrant, Defendant Jaynes made materially false, inaccurate and misleading statements under oath, knowingly and with

reckless disregard for the truth, without which the warrant would not have issued." (Complaint, ¶ 27.)

- "The core factual claim on which the warrant affidavit rested—that Defendant Jaynes had "verified through a US Postal Inspector that Jamarcus Glover had been receiving packages at 3003 Springfield Drive #4"—was false." (*Id*., ¶ 30.)

- Detective Jaynes swore in his affidavit for a warrant that he had personal knowledge of the facts included therein. (*Id*., ¶ 31.)

- Detective Mattingly said that prior to March 12, 2020, "he told Detective Jaynes there was no package history at the address." (*Id*., ¶ 31.)

- In contrast, Jaynes told officials that Mattingly had verified through a postal inspector that Glover was receiving packages at the address. (*Id*., ¶ 31.)

- LMPD fired Jaynes for his affidavit, saying "it was not only inaccurate; it was not truthful." (*Id*., ¶ 34.)

In concluding this section, Walker suggest that "[b]ut for Defendant Jayne's false and misleading representations, the warrant to search Ms. Taylor's apartment would not have issued." (*Id*., ¶ 37.) Walker does not allege in this entire section dedicated to improperly applying for a search warrant that Mattingly ever knowingly or intentionally provide false information for Jaynes to use in his affidavit in support of a warrant.

A pleading is deficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Quite to the contrary, a plaintiff must allege facts stating a claim to relief that is "plausible on its face." *Id.*; accord *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Walker's complaint fails to plead detailed, plausible factual allegations in support of this Count against Sgt. Mattingly.

9

Second, even if Walker had provided detailed and plausible factual allegations to support his allegation against Sgt. Mattingly, he has still failed to plead a viable cause of action because Mattingly cannot be held liable for what Jaynes decided to put in his warrant application. Walker concedes that it was Jaynes' actions, not Mattingly's, that led to the warrant being issued: "But for Defendant Jayne's false and misleading representations, the warrant to search Ms. Taylor's apartment would not have issued." (Complaint, ¶ 37.)

Admittedly, there are some circumstances where a non-affiant might be held liable for an improper warrant. *See e.g.*, *Wheeler v. City of Lansing*, 660 F.3d 931, 942 (6th Cir. 2011) ("Wirth played a major role in preparing the affidavit and procuring the warrant and should be held responsible for the subsequent seizure of items pursuant to that warrant, whether or not he actually signed the affidavit and whether or not he actually seized any of the property.") In *Wheeler*, where the Court did extend liability to a non-affiant, the Court concluded that the non-affiant "spoke to the prosecuting attorney, giving her the information that [he] knew would form the basis of the warrant affidavit and obtaining the search warrant with this affidavit." *Id*. Accordingly, the Court concluded that the non-affiant in that case "played a major role in preparing the affidavit and procuring the warrant and should be held responsible for the subsequent seizure of items pursuant to that warrant, whether or not he actually signed the affidavit and whether or not he actually seized any of the property." *Id*.

That is undoubtedly distinct from the situation here. Walker's own pleadings prove this point. Sgt. Mattingly was indisputably not "in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions." *Wheeler*, 660 F.3d at 942 (quoting *Michalik v. Hermann,* 422 F.3d 252, 261 (5th Cir. 2005)).

Finally, Walker's claim is also deficient because the warrant that was issued would have been supported by probable cause even if one were to excise the portion of the warrant which Walker attributes to Mattingly's reporting.  In the context of an unconstitutional search warrant, an officer "will not be immune if … it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The *Malley* Court explained that immunity is appropriate unless "the warrant application is so lacking in indicia of a probable cause as to render official belief in its existence unreasonable…". *Id*. at 344-45.

A review of Jaynes' Affidavit confirms that there was ample factual support to find probable cause to search 3003 Springfield Drive, Apt. #4, whether or not the purportedly improper information was included.  (*See Search Warrant*, Ex. B.)  "'Probable cause' is defined as a sufficient quantum of evidence to convince a reasonable person that a crime has been committed and that fruits of the crime are likely to be present." *Mills v. City of Barbourville*, 389 F.3d 568, 576 (6th Cir. 2004).  In evaluating a probable cause determination, courts "apply a flexible 'totality of the circumstances' approach" which permits them "to evaluate the particular facts of each case." *Id*. (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*.  It is clear that even if Jaynes had omitted the allegedly untruthful provision in the application for a warrant, the application was still supported by probable cause.

2.      Even if Sgt. Mattingly Did Violate Walker's Constitutional Rights, He Is Still Entitled to Qualified Immunity Because Those Rights <u>Were Not Clearly Established.</u>

Even if Sgt. Mattingly had violated Walker's constitutional rights (he did not), "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  The Sixth Circuit has taken this a step further, generally requiring that existing precedent within the Circuit as "[it] can't expect officers to keep track of persuasive authority from every one of our sister circuits." *Abdur-Rahim v. City of Columbus, Ohio*, 825 Fed. Appx. 284, 288 (6th Cir. 2020) (quoting *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020)).  No authority exists within this circuit, or elsewhere, that would have put Sgt. Mattingly on notice that his minimal role in gathering information between Jaynes and the Shively Police Department (*see* Complaint ¶¶ 19, 31) would consisted a constitutional violation.

B.      Neither Sgt. Mattingly Nor Det. Cosgrove Violated Walker's Clearly Established Fourth Amendment Rights When they Executed a Judicially <u>Authorized No-Knock Search Warrant at Ms. Taylor's Home (Count II).</u>

In Count II, Walker alleges that "[t]he manner in which Defendant Officers entered and searched Ms. Taylor's residence was objectively unreasonable, in violation of Walker's clearly established Fourth Amendment rights." (Complaint, ¶ 108.)  As Walker concedes, the Officers had a "no-knock" warrant, authorizing them to enter the residence without knocking or announcing.  Notwithstanding, Officers did knock repeatedly on Ms. Taylor's door before forcing entry.[5]  As explained herein, Walker's claim must be dismissed as Sgt. Mattingly and Det. Cosgrove are entitled to qualified immunity on this claim.

---

[5] Walker wrongly suggests in his Complaint that the Officers failed to "knock and announce," which is confusing since he concedes that officers did knock on multiple occasions.  (Complaint, ¶¶ 2, 46, 50, 51.)

The Fourth Amendment guarantees that all citizens are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. In order to protect these rights, police are required to obtain a search warrant from an impartial magistrate before they may search a dwelling. That is exactly what happened here. As explained in greater detail in preceding sections, it was Jaynes who authored a sworn search warrant affidavit and presented the same to Judge Shaw, of the Jefferson County Circuit Court. Judge Shaw issued the search warrant for 3003 Springfield Drive, Apt. #4 and officers did subsequently serve that warrant later that night.

In Count II, Walker alleges a constitutional violation based on "[t]he manner in which Defendant Officers entered and searched Ms. Taylor's residence," suggesting that it was "objectively unreasonable, in violation of Walker's clearly established Fourth Amendment rights." (Complaint, ¶ 108.) More specifically, he claims that because Officers had decided amongst themselves to "knock and announce" at Ms. Taylor's address, that they were therefore foreclosed from executing the warrant as a "no-knock." (Complaint, ¶ 109.) Walker now sues because, while he admits that they knocked repeatedly, he alleges that they failed to properly announce themselves. (Complaint, ¶ 110.)

This claim cannot survive because, as Walker admits, Officers were not required to either knock or announce their presence in executing the warrant at Springfield Drive. They were judicially authorized to enter without either knocking or announcing.

C.   Neither Sgt. Mattingly Nor Det. Cosgrove Violated Walker's Fourth Amendment Right to Be Free from Excessive Force (Count III).

In Count III, Walker alleges that Sgt. Mattingly and Det. Cosgrove violated his right to be free from excessive force. (Complaint, ¶¶ 116-127.) As Walker concedes in his Complaint, he

was the first person at Springfield Drive to fire his weapon.  This "single shot" struck Sgt. Mattingly in the thigh.  (*Id*., ¶ 121.)  After having been fired upon by Walker, Sgt. Mattingly and Det. Cosgrove returned gunfire.  As explained below, neither Sgt. Mattingly nor Det. Cosgrove violated Walker's right to be free from excessive force.  Quite to the contrary, their actions were consistent with clearly established law on an officer's right to protect themselves when confronted with deadly force.

1.      Sgt. Mattingly and Det. Cosgrove's Decisions Prior to Walker <u>Firing His Gun are Irrelevant to Walker's Excessive Force Claim.</u>

While Sgt. Mattingly and Det. Cosgrove acted reasonably and in accordance with the law in executing the warrant at Ms. Taylor's apartment, it is critically important that Walker's questions regarding the propriety of their entry into the apartment have no bearing on his excessive force claim.

The Sixth Circuit has addressed this issue on many occasions.  In *Chappell v. City Of Cleveland*, like here, the parties disagreed about whether officers had properly announced themselves before being involved in a deadly altercation.  As the Sixth Circuit explained in *Chappell,* "the events before the shooting are not a factor in determining whether the detectives had probable cause to use deadly force once they entered the bedroom."  585 F.3d 901, 914 (6th Cir. 2009).  The Court's conclusion in *Chappell* was not an aberration.  Quite to the contrary, it is supported by a long line of Sixth Circuit precedent.  *See Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 406-407 (6th Cir. 2007) (evidence of recklessness by one officer in events leading up to shooting was immaterial in evaluating objective reasonableness of shooting officer's decision to use deadly force in the situation he faced at time of shooting); *Bouggess*, 482 F.3d at 889 ("An officer's prior errors in judgment do not make a shooting unreasonable as long as the

14

officer acted reasonably during the shooting itself and the few moments directly preceding it.");
*Claybrook v. Birchwell,* 274 F.3d 1098, 1104–05 (6th Cir. 2001) (applying temporally segmented analysis to possibly erroneous actions taken by officers and finding error that preceded shooting segment to be immaterial); *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000) (applying segmented analysis to excessive force claim in determining which facts were material); *Dickerson v. McClellan,* 101 F.3d 1151, 1161–62 (6th Cir.1996) (holding the time frame is crucial and evaluating reasonableness of officers' use of deadly force at the time of the seizure, irrespective of their prior unreasonable conduct in creating the circumstances); *Brandenburg. v. Cureton,* 882 F.2d 211, 214 (6th Cir. 1989) ("The Sixth Circuit has made clear that events leading up to a shooting, even if they were inappropriate and a proximate cause of the injury, are not material to a civil rights case.")

2.     Neither Sgt. Mattingly, nor Det. Cosgrove Violated Walker's Constitutional Rights In Returning Gunfire after Walker Shot Sgt. Mattingly.

It is apparent, based solely on the allegations that Walker sets forth in his Complaint, that that Sgt. Mattingly and Det. Cosgrove are entitled to qualified immunity on Walker's excessive force claim.  The law is clear that police officers are entitled to protect themselves when they are confronted with deadly force.

In a factually similar case, *Estate of Sowards v. City of Trenton*, 125 Fed. Appx. 31, 38 (6th Cir. 2005), the Sixth Circuit affirmed a district court's decision to grant qualified immunity to police officers who were, like Sgt. Mattingly and Det. Cosgrove, confronted with an armed man when they breached an apartment door.  Unlike here, the armed man in *Sowards*, did not shoot.  Nevertheless, instinctively, the officers began firing at the gun.  *Id*. at 34.  The Court held that whether the decedent shot first or did not fire his gun is immaterial to whether the officers'

15

actions were "reasonable under the circumstances." *Id*. at 38.  Instead, the Court focused on the issue of whether the decedent threatened the officers with the gun at close range such that they were justified in using deadly force in self-defense. *Id*. (citing *Boyd*, 215 F.3d at 600).

Many Courts within the Sixth Circuit have similarly concluded that officers are entitled to qualified immunity when sued for using force after being confronted with an immediate threat of harm.  For example, in *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 974-75 (6th Cir. 2019), the Court held that officers were immune from liability after fatally shooting a mentally ill man in a paranoid state who took a step toward officers with his knife raised.  In *Mullins v. Cyranek*, 805 F.3d 760, 765-64 (6th Cir. 2015), the Court found that an officer was protected by qualified immunity when he made a split-second decision to shoot when the suspect, who held a gun, resisted arrest while simultaneously throwing the gun.  In *Boyd v. Baeppler*, the Sixth Circuit reversed the district court's denial of qualified immunity when officers reasonably used deadly force when it was reported to them that the suspect, who was armed, fired his weapon and pointed his gun at members of the public, and ran toward the officers with his gun. 215 F.3d at 599-600.  Similarly, in *Chappell*, 585 F.3d at 904, the Court reversed the trial court's denial of qualified immunity when officers executing a search warrant fatally shot a fifteen-year-old boy who was not the suspect of the armed robbery but who "came at officers with a knife upheld" during the search.

Other federal courts, from outside the Sixth Circuit, have come to the same conclusions. *See, e.g.*, *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 988-89 (7th Cir. 2021) (Seventh Circuit affirmed district court's finding that officer was entitled to qualified immunity because he heard two gunshots and looked to see the decedent holding a gun); *Robinson v. Arrugueta*, 415 F.3d 1252, 1254 (11th Cir. 2005) (affirming the district court's grant of summary judgment on

qualified immunity grounds when officer fatally shot the suspect who was driving his car toward the officer); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1310-11 (10th Cir. 2009) (dismissing on qualified immunity grounds because an officer fatally shot suspect in a split-second response to a reasonably perceived, immediate threat when suspect quickly moved his gun to aim at himself, the police dog, and the officers); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (granting qualified immunity when an officer shot an unarmed arrestee who had previously brandished a knife and the officer believed that the arrestee, advancing toward the officer, was still armed).

In sum, Officers are entitled to qualified immunity when applying deadly force in an immediate and reasonable reaction to an individual's threatening action with a weapon, regardless of the kinds of weapons used.  The instant case presents an even stronger argument for qualified immunity than many of those outlined above because Sgt. Mattingly was not only threatened with force, but actually, severely, injured by Walker's use of force.  In light of Sgt. Mattingly's injury (which unfolded in front of Det. Cosgrove), both Mattingly and Cosgrove reasonably perceived a threat of bodily harm and were justified in returning Walker's gunfire.

> 3.    Even if Walker Did Plead a Constitutional Violation, it was Certainly Not Established that Officers Who Have Been Fired Upon (and Shot) Were Not Entitled to Defend Themselves with <u>Force.</u>

Even if Walker could plead a constitutional violation, he cannot show that the Sgt. Mattingly and Det. Cosgrove violated his clearly established rights.  Quite to the contrary, as demonstrated by the abundance of case law in the preceding section, they complied with the law as set forth by the Sixth Circuit and are, therefore, protected by qualified immunity and entitled to the immediate dismissal of this claim.

II.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THIS LAWSUIT PURSUANT TO *COLORADO RIVER,* AS WALKER HAS IMPROPERLY SPLIT HIS CAUSE OF ACTION IN BRINGING THIS REPETETIVE FEDERAL SUIT.

In the American legal system, a plaintiff only gets one bite at the apple.  Legal principles such as double jeopardy, res judicata, and collateral estoppel prevent a second bite.  Along those same lines, a federal court should abstain from exercising its jurisdiction if there is a substantially similar lawsuit pending in state court involving state law issues and abstention would promote comity and avoid piecemeal litigation.  In this case, Walker has split his cause of action between two forums in a clear attempt to get two bites at the same apple.  Sixth months after filing this lawsuit in Jefferson Circuit Court, Walker filed this suit against the same defendants.  Both cases arise from the same facts and circumstances related to the events that occurred on March 12th and 13th, 2020 at 3003 Springfield Drive, Apartment #4, in Louisville, Kentucky.  The overlap between this case and the senior action in state court, in terms of the facts and evidence to be discovered, will be substantial, if not identical.  Both cases involve the same Plaintiff, the same Defendants,[6] and the same exact facts.  In fact, each of the claims brought in this suit could have been brought in the initial action, but Walker strategically chose to split his cause of action – a move which is universally frowned upon.

A.   The Court Should Dismiss or Stay Walker's Complaint Pursuant to the *Colorado River* Abstention Doctrine.

Given the pendency of the state court case, this Court should abstain from exercising its jurisdiction under the doctrine of abstention set forth in *Colorado River Water Conservation v. United States*, 424 U.S. 800 (1976).  In *Colorado River*, the Supreme Court articulated what has come to be known as the "*Colorado River* abstention doctrine," which sets forth factors for

federal courts to consider in deciding whether to dismiss or stay a federal action when there is a concurrent state action pending. The Sixth Circuit has adopted the *Colorado River* abstention doctrine. *See Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998); *Bates v. Van Buren Twp.*, 122 F. App'x 803 (6th Cir. 2004).

In *Colorado River*, the Supreme Court held that federal courts may dismiss or stay a case when there is similar litigation pending in a state court in order to conserve judicial resources. 424 U.S. at 818. Federal courts have a "virtually unflagging obligation… to exercise the jurisdiction given to them." *Id.* at 817-818. Nonetheless, the Supreme Court has recognized, at certain times, "wise judicial administration" may justify federal court abstention. *Id.* In these "certain 'exceptional' circumstances… a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206-207 (6th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 817). To determine the applicability of *Colorado River*, courts first must determine whether there is a parallel proceeding in a state court. *Bates*, 122 F. App'x at 806; *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Once that has been established, a court must weigh the eight factors set forth by the Supreme Court. *See PaineWebber, Inc.*, 276 F.3d at 206- 207; *Romine*, 160 F.3d at 340-41 (citations removed); *Bates*, 122 F. App'x at 807.

As discussed in more detail below, the senior state case currently pending in Jefferson County is a parallel proceeding, and the factors weigh heavily in favor of this Court abstaining jurisdiction from exercising jurisdiction.

---

[6] This suit brings claims against thirteen defendants. All thirteen of those defendants have been sued in the state case. (*See* Ex. A.)

1.    This Case is Parallel to Walker's State Case.

In deciding whether abstention is appropriate, a court must first determine whether "the concurrent state and federal actions are actually parallel." *Romine*, 160 F.3d at 339 (citing *Crawley*, 744 F.2d at 28).   However, "'*[e]xact parallelism is not required; 'it is enough if the two proceedings are substantially similar.*'"   *Romine*, 160 F.3d at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)) (emphasis added). The Sixth Circuit "has never held that only a perfect, or even near-perfect, symmetry of parties and causes of action would satisfy this requirement." *Preferred Care of Del., Inc. v. Vanarsdale*, 676 F. App'x 388, 393 (6th Cir. 2017) (citing *Romine*, 160 F.3d at 340). Instead, "so long as the parties are substantially similar, and the claims raised in both suits are predicated on the same allegations as to the same material facts, the two actions will come close enough to count as parallel." *Id*.   (internal quotations omitted).

Here, the material facts are straightforward and overlap significantly, if not completely. Both cases center around the incident that occurred on March 12th and 13th, 2020 at 3003 Springfield Drive.  All of Walker's claims – both federal and state- involve the same Plaintiff, the same police officers, the same apartment, the same warrant, and the same unfortunate series of events that led to the death of Ms. Taylor.  Walker's cases indisputably arise from the same operative facts, and undoubtedly satisfy the first prong of the Court's *Colorado River* analysis.

2.    The *Colorado River* Factors Weigh in Favor of Federal Abstention.

If proceedings are parallel, the Sixth Circuit has instructed courts to consider eight factors when deciding whether to apply *Colorado River* abstention. These factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained . . . (5)

20

whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340-41 (citations removed); *Bates*, 122 F. App'x. at 807. "These factors, however, do not comprise a mechanical checklist. Rather, they require 'a careful balancing of the important factors as they apply in a given case' depending on the particular facts at hand." *Romine*, 160 F.3d at 341 (internal citations omitted).

In this case, the first two factors are neutral, as it does not appear that any res or property claims are at issue and the federal forum is not a less convenient location for the parties. As a result, the first two factors of the analysis "weigh marginally against abstention." *See Harding v. Apartment Inv. & Mgmt. Co.*, 2011 U.S. Dist. LEXIS 5557, at *11 (W.D. Ky. Jan. 20, 2011).

The third *Colorado River* factor – the avoidance of piecemeal litigation – weighs heavily in favor of dismissing or staying this case. A desire to avoid piecemeal litigation was "the consideration that was paramount in Colorado River itself." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). When two courts adjudicate the same issue, they "duplicate judicial effort" and "potentially render conflicting results." *Romine*, 160 F.3d at 341. Walker initially chose to file suit in state court and has actively litigated those claims for more than eight months. He should not be allowed to shop for a new forum and also prosecute his claims in a second court. If both lawsuits move forward, it is certain that the same issues will be addressed by both courts, which could lead to inconsistent decisions. This important factor weighs heavily in favor of abstention.

The fourth *Colorado River* factor – the order in which jurisdiction was obtained – and the seventh factor – the relative progress of the state and federal proceedings – both weigh in favor of abstention. "[P]riority should not be measured exclusively by which complaint was filed first,

but rather in terms of how much progress has been made in the two actions." *Moses*, 460 U.S. at 21.  Here, the state court proceeding was filed on September 1, 2020, over six months prior to Walker filing suit in federal court.  In the senior state case, most of the Defendants have filed and argued dispositive motions, and the court is in the midst of issuing ruling on those motions.  In addition, the state court has ordered limited discovery.  As the state court record reflects, there has been a considerable amount of activity in this case since it was filed eight months ago.  It is undeniable that discovery will be voluminous and time intensive.  The parties currently have eight depositions scheduled to take place within the next couple months and some written discovery has already occurred.  This federal case, however, it in its initial stages, with only a complaint and recently filed dispositive motions pending before the Court.  Thus, the state court obtained jurisdiction first and its proceedings have progressed further, both weighing in favor of abstention.

The fifth factor is whether the source of governing law is state or federal.  The Court should also consider factor eight - the presence for concurrent jurisdiction - in this analysis.  Under this factor, if concurrent jurisdiction exists, the court is more likely to abstain.  The law governing Walker's claims in this case is clearly federal.  (*See* Complaint, R. 1.)  The state court, however, would have concurrent jurisdiction over Walker's Section 1983 claims brought in this matter.[7]  *See Felder v. Casey,* 108 S. Ct. 2302, 2307 (1988); *Patsy v. Board of Regents*, 457 U.S. 496, 506-07 (1982); *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980); *Martinez v. California*, 444 U.S. 277, 283 n.7 (1980).  Thus, the presence of concurrent jurisdiction weighs in favor of abstention.

---

[7] Defendants do not dispute that a federal court has subject matter jurisdiction over a claim under Section 1983, but Defendants argue that the Court should not exercise jurisdiction because of the ongoing parallel state court action.

The sixth factor analyzes "the adequacy of the state action to protect the federal plaintiff's rights."   *Romine*, 160 F.3d at 341.   "This factor concerns whether the state court can obtain personal jurisdiction over all of the important parties, hear all of the federal plaintiff's claims, and provide all of the requested relief."   *Harding*, 2011 U.S. Dist. LEXIS 5557 at *15.   The state court clearly has personal jurisdiction over all the parties and Walker could have brought all of his federal claims in the initial, senior state action.   There is no suggestion that Walker's rights would not be protected in state court.   This factor weighs in favor of abstaining.   *See PaineWebber, Inc.*, 276 F.3d at 208 ("[T]he sixth factor . . . presents the strongest basis for abstaining, because the state court action is adequate to protect PaineWebber's interests.").

In sum, balancing the *Colorado River* factors, abstention in this case is appropriate.   Five of the eight favors support abstention.   Walker's subsequent federal law claims could have been brought in the state court case and vice versa.   Nonetheless, Walker decided to file separate suits for one of two reasons: (1) he wanted two bites at the apple, so he split his cause of action to take discovery twice, or (2) he did not want this initial suit to be removed to federal court, which suggests forum shopping.   Either way – Walker's tactical decision to file two separate and nearly identical suits should not expose Defendants to the burden of participating in piecemeal litigation.   According, Defendants request that the Court dismiss this case or stay it until the state court action is resolved.[8]

---

[8] Courts are divided on the proper remedy when applying *Colorado River* abstention doctrine.   Some courts have dismissed cases, while others have stayed the actions pending the outcome of the parallel litigation. *See, e.g.*, *Anzalone v. Trent Gribble*, 2010 U.S. Dist. LEXIS 42366 (M.D. Tenn. Apr. 30, 2010); *cf. Bates*, 122 F. App'x at 808 (staying an action in which *Colorado River* abstention applied).

<u>Conclusion</u>

On the evening in question, Sgt. John Mattingly and Det. Myles Cosgrove went to serve a search warrant as they had been called upon to do thousands of times before.  Notwithstanding the fact that they were authorized to immediately breach the door, they knocked repeatedly, but nobody came.  When they did eventually force entry they were met with Walker's bullet.  It struck Sgt. Mattingly in the thigh.  The events that transpired are undoubtably tragic.  Ms. Taylor died and Sgt. Mattingly was shot.  The fact that tragic events unfolded, however, does not mean that Walker has viable civil claims or is entitled to a civil recovery.  As Sgt. Mattingly and Det. Cosgrove did not violate Walker's constitutional rights, much less clearly established constitutional rights, they are protected by qualified immunity.  Accordingly, Walker's claims must be dismissed.  In the alternative, the Court should decline to exercise jurisdiction over this matter and either dismiss it outright, or stay the case until the parallel action in Jefferson Circuit Court has been finally resolved.

Respectfully submitted,

*/s/ Kent Wicker*
Kent Wicker
William H. Brammell, Jr.
Kayla M. Campbell
DRESSMAN BENZINGER LAVELLE PSC
2100 Waterfront Plaza
321 West Main Street
Louisville, KY  40202
(502) 572-2500

**<u>Certificate of Service</u>**

I hereby certify that I have served a copy of the foregoing by means of the Court's electronic filing system on this 17th day of May, 2021.

*/s/ Kent Wicker*
Kent Wicker
