UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH WALKER, III,                                                    Plaintiff,

v.                                                   Civil Action No. 3:21-cv-161-DJH-LLK

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT et al.,                                          Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

The facts alleged in Plaintiff Kenneth Walker, III's complaint arise from Louisville Metro Police Department's search of Breonna Taylor's apartment.  (Docket No. 1, PageID # 12–14)  Believing that intruders were attempting to break into Taylor's apartment, Walker, Taylor's boyfriend and a licensed gun owner, asserts that he fired a single shot at the LMPD officers upon their entry.  (*Id.*, PageID # 15–16)  The officers returned fire, killing Taylor.  (*Id.*, PageID # 16)  Walker sued Louisville/Jefferson County Metro Government and several LMPD officers, claiming violations of 42 U.S.C. § 1983.  (*See id.*)  Defendants move the Court to abstain or, alternatively, to dismiss Walker's complaint.  (D.N. 27-1; D.N. 29-1; D.N. 30-1; D.N. 31-1)  After careful consideration, the Court will grant in part and deny in part the motion of Metro and Defendants Hoover, James, Nobles, Campbell, Huckelberry, Phan, Goodlett, and Burbrink (the "Metro defendants").  The Court will deny the motions to dismiss of Defendants Mattingly, Cosgrove, Jaynes, and Hankison.

## I.

The Court "takes the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion."  *Siefert v. Hamilton Cty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ P. 12(b)(6)).  On March 12, 2020, LMPD Detective Joshua Jaynes applied for

1

a warrant to search Breonna Taylor's apartment, located on Springfield Drive.  (D.N. 1, PageID # 9)  Jaynes also applied for a warrant to search a residence on Elliott Avenue, at which Jamarcus Glover and Adrian Walker[1] were suspected of drug trafficking.  (*Id.*)  Jaynes stated in his warrant affidavit that he had witnessed Glover and Adrian Walker dropping "suspected narcotics" in a rock pile on Elliot Avenue to resupply the Elliot Avenue residence.  (D.N. 29-3, PageID # 353)

In support of the warrant to search Taylor's apartment, LMPD Sergeant Jonathan Mattingly and LMPD Detectives Shawn Nobles and Kelly Goodlett asked the Shively Police Department for assistance and to verify with the local office of the United States Postal Inspection Service that Glover had been receiving packages at Taylor's residence.  (D.N. 1, PageID # 26–27)  A Postal Inspector denied that any packages for Glover were delivered to Taylor's apartment, and the Shively Police Department relayed this information to Mattingly, Nobles, and Goodlett. (*Id.*)  Mattingly then "conveyed to . . . Jaynes that the US Postal Inspector had verified that [Glover] was receiving packages" at Taylor's residence.  (*Id.*, PageID # 27)  Jaynes "endorsed" Mattingly's "falsehoods" and "further extended them" in his warrant affidavit by testifying that he had "personally verified" with a Postal Inspector that Glover had been receiving packages at Taylor's apartment "to avoid detection from law enforcement" and "for safe keeping."  (*Id.*; *see* D.N. 29-3, PageID # 353)

Jaynes also stated in his affidavit that on January 16, 2020, he witnessed Glover retrieve a single package from Taylor's apartment and then drive "to a known drug house."  (D.N. 29-3, PageID # 353)  Jaynes further asserted that he observed Taylor's car parked at the Elliot Avenue residence and a car used by both Glover and Adrian Walker parked at Taylor's residence on several occasions.  (*Id.*)  Jaynes added that he had verified "through multiple computer databases"

---

[1] No relation to Plaintiff Kenneth Walker, III.  (D.N. 1, PageID # 9)

that Taylor lived at the Springfield Drive residence and that as of February 20, 2020, Glover "use[d]" the Springfield Drive residence "as his current home address." (*Id.*) Jaynes requested a no-knock warrant due to "these drug trafficker[s'] . . . history of attempting to destroy evidence" and "fleeing from law enforcement" (*id.*, PageID # 354), although Taylor had no criminal history. (D.N. 1, PageID # 12)  Based on Jaynes's affidavit, a Jefferson Circuit Court judge issued a no-knock warrant to search Taylor's apartment, among other locations, including the Elliot Avenue residence. (*See* D.N. 29-3)

At an operational meeting before the searches, LMPD officers reclassified the search of Taylor's residence as a "knock-and-announce" search, expecting that Taylor would be home alone. (D.N. 1, PageID # 13)  Officers believed that Taylor's residence was a "soft target" that "posed no threat" and expected the search would be "low key." (*Id.*)  On March 13, Mattingly and Nobles, as well as LMPD Lieutenant Shawn Hoover, Officer Michael Campbell, and Detectives Myles Cosgrove, Tony James, and Brett Hankison executed a midnight search of Taylor's apartment. (*Id.*, PageID # 14)  Taylor and Kenneth Walker III, her boyfriend, were sleeping inside the apartment. (*Id.*)  Mattingly "banged" on the front door, and Taylor at least twice yelled, "Who is it?" (*Id.*, PageID # 15)  The officers failed to announce their identity or that they were executing a search warrant. (*Id.*)

Walker, a licensed firearm owner, retrieved his gun, believing unlawful intruders were breaking into Taylor's apartment. (*Id.*)  Within one minute after knocking, the officers, who were in plain clothes, used a battering ram to force open the front door. (*Id.*, PageID # 15–16)  Walker fired a single shot at the officers upon their unannounced entry, still believing they were intruders. (*Id.*, PageID # 16)  Mattingly and Cosgrove responded by firing twenty-two shots into the apartment in less than one minute, although Cosgrove could not clearly see Taylor and Walker.

3

(*Id.*)  Hankison fired shots into the apartment through the patio door and windows.  (*Id.*)  Six shots from the officers struck Taylor, killing her.  (*Id.*)  Mattingly was shot once in the leg and survived.  (*Id.*)  Officers found no contraband or evidence of drug trafficking in Taylor's apartment.  (*Id.*, PageID # 16–17)  Walker was initially charged with murder and later attempted murder and first-degree assault for allegedly shooting Mattingly, but the criminal charges were ultimately dismissed with prejudice.  (*Id.*, PageID # 18)

In April 2020, one month after the search of Taylor's apartment, Jaynes asked Shively Police Department Sergeant Timothy Saylor if Glover's packages had been delivered to Taylor's address.  (*Id.*, PageID # 10)  Saylor stated that no packages for Glover were delivered there.  (*Id.*)  Chief Yvette Gentry later terminated Jaynes for "a sustained untruthfulness violation based on information included in [his] affidavit."  (*Id.*, PageID # 11–12)

In September 2020 (*see* D.N. 27-3), Walker filed an action in Jefferson Circuit Court against the Commonwealth of Kentucky, Louisville/Jefferson County Metro Government, Mayor Greg Fischer, and LMPD officers[2] in their official and individual capacities, seeking declaratory relief under Kentucky state law that (1) he is immune from further arrest, detention, charges, and prosecution under Ky. Rev. Stat. § 503.085 (which provides that "a law enforcement agency" may not arrest an individual who uses force as permitted under Kentucky law unless there is probable cause that the force used was unlawful); (2) Metro's "county sovereign immunity" violates the Kentucky Constitution; and (3) Metro's immunity is waived up to the limits of insurance.  (D.N. 30-3, PageID # 422–31)  Walker also sought damages, claiming (1) assault; (2)

---

[2] These individuals include Detective Joshua Jaynes, Detective Brett Hankison, Detective Myles Cosgrove, Sergeant Jonathan Mattingly, Lieutenant Shawn Hoover, Detective Tony James, Detective Michael Nobles, Officer Michael Campbell, Officer Andrea Shaw, Sergeant Chad Tinnell, Sergeant Amanda Seelye, and Former Chief Steve Conrad.  (D.N. 30-3)

battery; (3) false arrest and imprisonment; (4) malicious prosecution; (5) abuse of process; (6) negligence per se; (7) general negligence; and (8) supervisory negligence. (*Id.*, PageID # 431–36)

Walker filed the present action on March 12, 2021, under 42 U.S.C. § 1983. (*See* D.N. 1) Count I alleges that Jaynes, Mattingly, Nobles, Goodlett, LMPD Lieutenant Jerry Huckelberry, Sergeant Luke Phan, and Major Kimberly Burbrink violated the Fourth Amendment by obtaining and approving a search warrant based on "materially false" information. (*Id.*, PageID # 26) Count II asserts that Mattingly, Nobles, Cosgrove, Hankison, Hoover, James, and Campbell violated the Fourth Amendment by failing to announce before they entered Taylor's apartment. (*Id.*, PageID # 30) Count III alleges that Mattingly, Nobles, Cosgrove, Hankison, Hoover, James, and Campbell violated the Fourth Amendment by using excessive and unreasonable force when they executed the warrant. (*Id.*, PageID # 32) Count IV asserts that Metro's policies and practices proximately caused violations of Walker's Fourth Amendment rights. (*Id.*, PageID # 34–35) Defendants move the Court to abstain from exercising jurisdiction over this action or to dismiss Walker's complaint on the basis of qualified immunity. (*See* D.N. 27-1; D.N. 29-1; D.N. 30-1; D.N. 31-1)

## II.

### A.    Abstention

#### 1.    *Colorado River* Abstention

Defendants argue that the Court should abstain from exercising jurisdiction over this case pursuant to the *Colorado River* abstention doctrine. (*See* D.N. 27-1, PageID # 120 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); D.N. 29-1, PageID # 322 (same); D.N. 30-1, PageID # 390 (same); D.N. 31-1, PageID # 479 (same)) Defendants

argue that Walker's state and federal actions are parallel and that the *Colorado River* factors support abstention. (D.N. 27-1, PageID # 120–26; D.N. 29-1, PageID # 322–27; D.N. 30-1, PageID # 390–95; D.N. 31-1, PageID # 479–82) Walker responds that the actions are not parallel and that even if they are parallel, the *Colorado River* factors weigh against abstention. (D.N. 35, PageID # 608–19)

A court may abstain under *Colorado River* only if (1) a plaintiff files parallel cases in state and federal courts and (2) the *Colorado River* factors support abstention. *Colo. River*, 424 U.S. at 817. Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction" because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)) (internal quotation marks omitted). However, a federal court may abstain from exercising jurisdiction in a case where there is a parallel state proceeding and "reasons of wise judicial administration" support abstention. *Id.* at 818. A federal court should abstain only in "extraordinary and narrow" circumstances. *Id.* at 813.

### a. Parallel Actions

Defendants argue that Walker's action in this Court is parallel to his state-court action because the cases arise from the same set of facts, involve substantially similar parties, and may require similar evidence. (D.N. 27-1, PageID # 122; D.N. 29-1, PageID # 323–24; D.N. 30-1, PageID # 390–92; D.N. 31-1, PageID # 479) Walker maintains that the actions are not parallel because the state action will not resolve his federal claims. (D.N. 35, PageID # 610) Specifically, he notes that the state complaint raises only state-law claims, while the federal complaint raises only § 1983 claims. (*Id.*, PageID # 610–11; *see* D.N. 1; D.N. 30-3)

6

The first step in the *Colorado River* analysis is to determine whether the state and federal proceedings are parallel. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). For two actions to be parallel, the parties to the state-court proceeding must be "substantially similar" to the parties in the federal proceeding, although there may be additional parties to the federal action. *Id.* at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). The two proceedings must also be "predicated on the same allegations as to the same material facts" to be considered parallel. *Id.*

Where the federal case raises issues that will not be resolved by the state proceeding, the federal court should not abstain. *See Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990) (finding abstention inappropriate when plaintiffs challenged three state statutes in federal court that were not challenged in the state-court action); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 603 (W.D. Tenn. 2011) ("If a state court action and a federal action are truly parallel, resolution of the state court action will also resolve all issues in the federal action." (citing *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994))). The Court "must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Baskin*, 15 F.3d at 572. When the federal court abstains under *Colorado River*, "it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). "If there is any substantial doubt as to this, it would be a serious abuse of discretion" to abstain. *Id.*

A federal court's obligation to exercise its jurisdiction is "particularly weighty" in § 1983 cases. *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 890 (9th Cir. 2011) (quoting *Miofsky v. Superior Ct. of Cal.*, 703 F.2d 332, 338 (9th Cir. 1983)) (internal quotation marks

omitted); *Hayes v. City of Columbus*, No. 2:10-CV-0513, 2011 WL 2174973, at *2 (S.D. Ohio June 3, 2011) (quoting *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 244 (9th Cir. 1989)) (internal quotation marks omitted). The Supreme Court has observed that "Congress intended § 1983 to be an independent protection for federal rights." *Pulliam v. Allen*, 466 U.S. 522, 541 (1984). *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 665–89 (1978) (discussing the legislative history of § 1983 and noting that it "intended to give a broad remedy for violations of federally protected civil rights").

Although Walker's state and federal actions center around the same facts and involve substantially the same parties (*compare* D.N. 1, *with* D.N. 30-3), resolution of the state-court action will not dispose of the issues in this action because Walker raises no federal claims in state court. *See Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 931 (N.D. Ohio 2021) (quoting *Wright*, 782 F. Supp. 2d at 603) (finding state and federal cases not parallel where different claims were brought in each court); *see Baskin*, 15 F.3d at 572 (stating that courts "must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised"). In state court, Walker seeks damages under state law for several torts and declaratory relief on state-law issues. (*See* D.N. 30-3, PageID # 422–38) In this Court, Walker alleges that Defendants violated his Fourth Amendment rights and seeks relief under § 1983. (D.N. 1, PageID # 26–36)

Citing *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 393 (6th Cir. 2017), Defendants correctly note that "the Sixth Circuit 'has never held that only a perfect, or even near-perfect, symmetry of parties and causes of action would satisfy th[e] requirement'" that actions are parallel. (*See, e.g.*, D.N. 30-1, PageID # 392 (quoting *Preferred Care*, 676 F. App'x at 393)) In *Preferred Care*, however, the Sixth Circuit found that the state and federal cases were

parallel because the federal plaintiffs sought to compel arbitration—the same defense they asserted in state court. *See* 676 F. App'x at 389. Thus, their federal claim would be resolved in state court. *See id.*, at 392–95. Here, unlike *Preferred Care*, Walker's state-court case will not resolve his federal claims. *See id.*; *cf. Romine*, 160 F.3d at 339 (finding state and federal cases parallel where federal claims were brought in both state and federal courts).

Because Walker's state and federal actions are not parallel, the Court will not abstain under *Colorado River*. *See* 424 U.S. at 817; *see also Baskin*, 15 F.3d at 572 (holding that state and federal cases were not parallel where the actions arose out of the same facts but each "contested a different aspect" of a city construction variance and sought "different relief"); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 360 F. Supp. 3d 714, 722–23 (M.D. Tenn. 2019), *aff'd sub nom.*, 805 F. App'x 379 (6th Cir. 2020) ("For the cases to be considered parallel . . . 'the critical question is whether there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case.'" (quoting *Summit Contracting Grp., Inc. v. Ashland Heights, LP*, 187 F. Supp. 3d 893, 897 (M.D. Tenn. 2016))); *Wright*, 782 F. Supp. 2d at 604 ("[W]hen the state and federal cases present different theories of recovery, courts do not generally characterize the proceedings as parallel." (quoting *Gentry v. Wayne Cty.*, No. 10–cv–11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010)) (internal quotation marks omitted)); *Hayes*, 2011 WL 2174973, at *2 (finding cases not parallel where federal claims were brought in federal but not state court); *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010) ("Although the parties are nearly identical and the cases arise from largely the same facts, these cases are not parallel since there are claims that will not be decided by the state court."); *cf. Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394

(6th Cir. 2019) (finding cases parallel where adjudication of the state-court claim required "determination of issues dispositive" to the federal claim).

### b. *Colorado River* Factors

Even assuming Walker's state and federal actions were parallel, the *Colorado River* factors weigh against abstention. *See Hunt v. Bank of Am., N.A.*, No. 5:18-CV-175-TBR, 2019 WL 3109854, at *4 (W.D. Ky. July 15, 2019) (assuming, *arguendo*, that the proceedings were parallel, weighing the *Colorado River* factors, and refusing to abstain). If cases are parallel, courts apply the test set forth in *Colorado River*, 424 U.S. at 818–19, and expanded in *Romine*, 160 F.3d at 340–41. This test requires courts to balance eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties; (3) avoidance of
> piecemeal litigation . . . . (4) the order in which jurisdiction was obtained. . . .
> (5) whether the source of governing law is state or federal; (6) the adequacy of the
> state court action to protect the federal plaintiff's rights; (7) the relative progress of
> the state and federal proceedings; and (8) the presence or absence of concurrent
> jurisdiction.

*Romine*, 160 F.3d at 340–41 (citations omitted). "No one factor is necessarily determinative," *Colo. River*, 424 U.S. at 818, and the factors "do not comprise a mechanical checklist." *Romine*, 160 F.3d at 341. Rather, the Court must apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21.

The parties do not dispute the first two factors: that the state court has not assumed jurisdiction over any res or property and that the federal forum is not less convenient than the state forum. (*See* D.N. 27-1, PageID # 123; D.N. 29-1, PageID # 325; D.N. 30-1, PageID # 393; D.N. 31-1, PageID # 480; D.N. 35, PageID # 615) These factors therefore weigh against abstention. *See Romine*, 160 F.3d at 341. The parties also agree that the fourth factor, the order in which jurisdiction was obtained, and the seventh factor, the relative progress of both

proceedings, weigh in favor of abstention (*see* D.N. 27-1, PageID # 124–26; D.N. 29-1, PageID # 326–27; D.N. 30-1, PageID # 393–94; D.N. 31-1, PageID # 480–81; D.N. 35, PageID # 616), because the state-court action was filed in September 2020, six months before Walker filed his complaint in this Court, and the state-court action has progressed further.  (*See* D.N. 1; D.N. 27-3)  The Court will address the remaining factors in turn.

### i.  Avoidance of Piecemeal Litigation

Defendants argue that the third factor, the avoidance of piecemeal litigation, weighs in favor of abstention because the state and federal courts are adjudicating the same issues, threatening inconsistent results and inefficiency.  (*See* D.N. 27-1, PageID # 123–24; D.N. 29-1, PageID # 325–26; D.N. 30-1, PageID # 393; D.N. 31-1, PageID # 480)  Walker maintains that the courts are not adjudicating the same issues because he brought only state-law claims in state court and § 1983 claims in federal court.  (*See* D.N. 35, PageID # 615–16)

Unlike *Colorado River*, where the state-court proceeding would have disposed of all federal claims, Walker's federal claims will not be resolved in state court.  *See* 424 U.S. at 819–20.  Moreover, in this case Walker brings a § 1983 claim, a cause of action that "was adopted to provide alternative, supplemental relief to persons who almost always have a state law remedy." *Williams v. Oak Park City Sch. Dist.*, No. 06-CV-12512-DT, 2007 WL 1063346, at *2 (E.D. Mich. Apr. 6, 2007) (citing *Monroe v. Pape*, 365 U.S. 167, 183 (1961), *overruled on other ground by Monell*, 436 U.S. at 658).  Therefore, this factor weighs against abstention.  *See id.* (finding the third factor weighed against abstention where plaintiffs brought state-law claims in state court and a § 1983 claim in federal court); *Hunt*, 2019 WL 3109854, at *4 (finding the avoidance-of-piecemeal-litigation factor weighed against abstention where plaintiffs brought claims in federal court that would not be resolved in the state-court action); *Brown v. City of Allen*

*Park*, No. CV-17-12403, 2017 WL 6539044, at \*4 (E.D. Mich. Dec. 21, 2017) (determining the avoidance-of-piecemeal-litigation factor weighed against abstention because "different legal claims [were] implicated" in state and federal courts); *cf. Romine*, 160 F.3d at 341 (finding the avoidance-of-piecemeal-litigation factor supported abstention where identical claims were brought in state and federal courts).

### ii. Source of Governing Law and Concurrent Jurisdiction

The parties dispute whether the fifth factor, the source of governing law, and the eighth factor, the presence or absence of concurrent jurisdiction, weigh against or in favor of abstention. (*See* D.N. 27-1, PageID # 124–25; D.N. 29-1, PageID # 326–27; D.N. 30-1, PageID # 394; D.N. 31-1, PageID # 481; D.N. 35, PageID # 617–18)   While Defendants agree that the source of governing law is federal, they argue that the state court can exercise concurrent jurisdiction in § 1983 cases, and that thus the fifth and eighth factors together favor abstention.  (*See* D.N. 27-1, PageID # 124–25 (citing *Romine*, 160 F.3d at 342); D.N. 29-1, PageID # 326–27 (citing *Romine*, 160 F.3d at 342); D.N. 30-1, PageID # 394; D.N. 31-1, PageID # 481)  Walker asserts that the presence of concurrent jurisdiction alone is "insufficient to justify abstention . . . where a congressional act provides the governing law and expresses a preference for federal litigation," as in § 1983 actions.  (D.N. 35, PageID # 617 (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 208) (6th Cir. 2001)) (internal quotation marks omitted))

"[T]he presence of federal law issues must always be a major consideration weighing against" abstention.  *Moses H. Cone*, 460 U.S. at 26.  Although this factor "has less significance" where the federal court's jurisdiction "is concurrent with that of the state courts," *id.* at 25, Defendants' argument that the fifth and eighth factors together favor abstention because state courts may exercise jurisdiction in § 1983 suits "reaches too far."  *Gentry*, 2010 WL 4822749, at

\*5.  "Concurrent jurisdiction may *alleviate* concerns about surrendering jurisdiction, but the presence of federal law '*always*' mitigates against abstention." *Id.* (quoting *Moses H. Cone*, 450 U.S. at 26).  Unlike the claims at issue in *Romine*, 160 F.3d at 342, and *Moses H. Cone*, 450 U.S. at 25–26, cases upon which Defendants rely, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law 'whether that action be executive, legislative or judicial.'"  *Patsy v. Bd. of Regents*, 457 U.S. 496, 503 (1982) (alteration in original) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)) (internal quotation marks omitted).

Ultimately, although state courts' ability to exercise concurrent jurisdiction lessens the weight of the source-of-law factor, the presence of § 1983 claims still favors federal jurisdiction. *See PaineWebber*, 276 F.3d at 208 (noting that the presence of concurrent jurisdiction is "insufficient to justify abstention . . . where a congressional act provides the governing law and expresses a preference for federal litigation"); *Alacare, Inc.-N. v. Baggiano*, 785 F.2d 963, 969 (11th Cir. 1986) ("*Colorado River* . . . has been rejected as a basis for abstention under Section 1983 in this Circuit." (citing *Forehand v. First Ala. Bank of Dothan*, 727 F.2d 1033, 1036 (11th Cir. 1984))); *Gentry*, 2010 WL 4822749, at \*5 (weighing the fifth and eighth factors "strongly against abstention" where plaintiff brought a § 1983 suit in federal court and state claims in state court); *Williams*, 2007 WL 1063346, at \*3 (weighing the fifth and eighth factors against abstention where plaintiff brought a § 1983 suit in federal court and state claims in state court); *Epps v. Lauderdale Cty.*, 139 F. Supp. 2d 859, 868–69 (W.D. Tenn. 2000) (refusing to abstain and noting that § 1983's "import weighs against abstention on the grounds of judicial economy where Congress created a cause of action for the sole purpose of vindicating federal civil rights").

### iii.     Adequacy of the State-Court Action

The parties interpret the sixth factor, the adequacy of the state-court action to protect the federal plaintiff's rights, differently.  Defendants argue that this factor favors abstention because Walker could have brought his § 1983 claims in state court.  (*See* D.N. 27-1, PageID # 125; D.N. 29-1, PageID # 326–27; D.N. 30-1, PageID # 395; D.N. 31-1, PageID # 481–82)  Walker maintains that the state action, as it currently exists, cannot adequately protect his federal rights and that this factor thus weighs against abstention.  (*See* D.N. 35, PageID # 618–19)  Additionally, he asserts that because Metro is claiming immunity in the state-court action, he would be denied full relief in state court.  (*Id.*, PageID # 619)

Like the parties, district courts in the Sixth Circuit have interpreted this factor differently. *Compare Epps*, 139 F. Supp. 2d at 867–69 (finding the adequacy of the state-court action favored exercising jurisdiction where plaintiff brought a § 1983 claim in federal court and state-law claims in state court, noting that federal courts have "extensive experience in adjudicating § 1983 claims"), *and Gentry*, 2010 WL 4822749, at *6 (finding the adequacy of the state-court action favored exercising jurisdiction where plaintiff brought a § 1983 suit in federal court and state-law claims in state court), *with Brown*, 2017 WL 6539044, at *5 (finding the adequacy of the state-court action "slightly" weighed against exercising jurisdiction where plaintiff brought a Title VII claim in federal court and state-law claims in state court because state courts "can and regularly do[]" protect plaintiffs' federal rights).  The Court need not determine which interpretation is correct, however, because even if this factor weighs against exercising jurisdiction, most of the other *Colorado River* factors do not. This case thus does not qualify as "an extraordinary and narrow" circumstance justifying abstention.  *Colo. River*, 424 U.S. at 813.

In sum, the Court finds that the actions are not parallel because the federal action contains claims that would not be resolved by the state court. *See Heitmanis*, 899 F.2d at 528. Yet even assuming the actions were parallel, the Court would still refuse to abstain under the *Colorado River* factors because the first, second, third, fifth, and eighth factors favor exercising jurisdiction, while only the fourth and seventh factors support abstention. *See* 424 U.S. at 813; *Romine*, 160 F.3d at 340–41 (expanding the *Colorado River* factors). Because the Court has a "substantial doubt" that the state-court proceeding "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," it must refuse to abstain. *Moses H. Cone*, 460 U.S. at 28.

### 2.   *Younger* Abstention

The Metro defendants also move the Court to abstain under the *Younger* doctrine. (*See* D.N. 31-1, PageID # 477); *Younger v. Harris*, 401 U.S. 37, 49–58 (1971). The *Younger* doctrine prevents federal courts from interfering in certain "exceptional" state-court proceedings, namely "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)). "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state-court proceedings seeking to enjoin continuation of those state proceedings." *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984); *see Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010).

According to the Metro defendants, *Younger* applies because a state proceeding is currently pending that both involves "an important state interest" and provides Walker an "adequate opportunity" to raise his § 1983 claims. (D.N. 31-1, PageID # 478) However, as

Walker correctly notes (D.N. 35, PageID # 619–20), *Younger* is inapplicable because Walker is the plaintiff in both this case and the state-court proceeding.  *Younger* does not prevent a federal court from exercising jurisdiction where a plaintiff initiates suits in both state and federal courts, as Walker did, and the Metro defendants fail to assert that any of the "exceptional" circumstances discussed in *Sprint*, 571 U.S. at 73, are applicable to this case.  (*See* D.N. 31-1)  *Younger* abstention is therefore inapplicable.  *See Devlin*, 594 F.3d at 895.

**B.    Claim-Splitting**

The Metro defendants further contend that the Court should dismiss Walker's complaint for "improper claim-splitting," characterizing the separate state and federal proceedings as "duplicate and vexatious litigation."  (D.N. 31-1, PageID # 474–75)  In support, they cite *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146–47 (6th Cir. 2020) and *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019).  (*Id.*)  However, as Walker correctly notes, *Church Joint Venture* and *Waad* involved duplicate federal suits, not duplicate claims brought in state and federal courts.  (D.N. 35, PageID # 621–22)

Moreover, as *Colorado River* clarified, there is a "difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction."  424 U.S. at 817. *Colorado River* provides the proper framework for determining the Court's obligation to exercise its jurisdiction in this case, and Metro's claim-splitting argument therefore fails.  *See id.*; *see also Wyles v. Sussman*, 661 F. App'x 548, 551–52 (10th Cir. 2016) (finding the district court's dismissal of a federal claim because of a similar claim filed in state court erroneous and remanding for the district court to consider abstention under *Colorado River*); *Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 89 (2d Cir. 2013) (finding the district court's dismissal of a federal claim because of "a similar pending *state* court litigation"

erroneous and noting that *Colorado River* provides the proper analysis); *Summit Contracting Grp., Inc. v. Ashland Heights, LP*, 187 F. Supp. 3d 893, 897–99 (M.D. Tenn. 2016) (applying *Colorado River* when plaintiff brought duplicate claims in state and federal courts).

## C.    Kentucky Preclusion Law

Finally, the Metro defendants argue that the Court should defer to Kentucky's preclusion law, which they assert requires dismissal of Walker's complaint.  (D.N. 31-1, PageID # 476)  In support, the Metro defendants cite *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005), and *Morris v. City of Shepherdsville*, No. CIV.A. 08-374-C, 2009 WL 577259, at *2–4 (W.D. Ky. Mar. 5, 2009).  (*See id.*)  Yet as Walker correctly points out (D.N. 35, PageID # 623), *McKinley* involved a final state-court judgment.  *See* 404 F.3d at 427–28.  And in *Morris*, the Court held that *res judicata* did not apply because the state court had not made a final decision on the merits.  2009 WL 577259, at *4.  Similarly, there is no final judgment in Walker's state-court case, and thus the Court is not required to give the pending state matter preclusive effect. *See id.*

## D.    Qualified Immunity

Jaynes, Mattingly, Cosgrove, and the individual Metro defendants move the Court to dismiss Counts I, II, and III of Walker's complaint based on qualified immunity.[3]  (D.N. 29-1, PageID # 328; D.N, 30-1, PageID # 378; D.N. 31-1, PageID # 482)  Count I asserts that Jaynes, Mattingly, Nobles, Huckelberry, Phan, Goodlett, and Burbrink violated Walker's Fourth Amendment rights by obtaining and approving a search warrant based on "materially false"

---

[3] Hankison does not move to dismiss Walker's complaint based on qualified immunity.  (*See* D.N. 27-1)  Additionally, Louisville/Jefferson County Metro Government does not move to dismiss Count IV for failure to state a claim upon which relief can be granted under Federal Rule of Procedure 12(b)(6).  (*See* D.N. 31-1)

information.  (D.N. 1, PageID # 26)  Count II alleges that Mattingly, Nobles, Cosgrove, Hoover, Hankison, James, and Campbell, the individuals who executed the warrant, violated the Fourth Amendment by failing to announce before they entered Taylor's apartment.  (*Id.*, PageID # 30) Count III asserts that Mattingly, Nobles, Cosgrove, Hoover, Hankison, James, and Campbell violated the Fourth Amendment by using excessive and unreasonable force in executing the warrant.  (*Id.*, PageID # 32)

Qualified immunity protects government officials who "perform[] discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 818 (1982)) (internal quotation marks omitted).  In evaluating a § 1983 claim, courts must assess whether (1) "the allegations give rise to a constitutional violation" and (2) "whether the right was clearly established at the time of the incident."  *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)) (internal quotation marks omitted).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Crawford*, 15 F.4th at 760 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted).  Still, the Sixth Circuit has cautioned against "'resolv[ing] a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Hart v. Hillsdale Cty.*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016)); *see Newell v. Cent. Mich. Univ. Bd. of Trs.*, No. 20-1864, 2021

WL 3929220, at *6 (6th Cir. Sept. 2, 2021) ("Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is obvious or squarely governed by precedent, which prevents [it] from determining whether the facts of [a] case parallel a prior decision or not for purposes of determining whether a right is clearly established." (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)) (internal quotation marks omitted)).

"[R]eading the complaint in the light most favorable to the plaintiff," the Court must ask whether "it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Hart*, 973 F.3d at 635 (quoting *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019)) (internal quotation marks omitted). As in any motion to dismiss, the plausibility standard requires the plaintiff to plead "factual content that allows the [C]ourt to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice, and the Court need not accept such statements as true. *Id.* at 664 (citing *Twombly*, 550 U.S. at 555). A complaint in which the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Hart*, 973 F.3d at 635 (quoting *Ashcroft*, 556 U.S. at 678). As explained below, Walker sufficiently alleges that LMPD officers obtained a warrant that was invalid, failed to announce before entering, and used unreasonable and excessive force, in violation of the Fourth Amendment. (*See* D.N. 1, PageID # 26–34)

1.     **Count I: Invalid Warrant**

Pursuant to the Fourth Amendment, law enforcement officers must obtain a warrant based on probable cause "from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978).  Probable cause demands "a fair probability that contraband or evidence of a crime will be found in a particular place."  *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (quoting *United States v. Brown*, 857 F.3d 334, 339 (6th Cir. 2017)) (internal quotation marks omitted).  Officers violate the warrant requirement if they make "a false statement knowingly and intentionally, or with reckless disregard for the truth" in a warrant affidavit and the "false statement is necessary to the finding of probable cause."  *Id.* at 385 (quoting *Franks*, 438 U.S. at 155–56) (internal quotation marks omitted).

a.     **Joshua Jaynes**

Walker alleges that Jaynes deliberately lied in his warrant affidavit when Jaynes stated in Paragraph 9 that he verified with a Postal Inspector that Glover had been receiving packages at Taylor's apartment.  (D.N. 29-3, PageID # 353; *see* D.N. 1, PageID # 26–27)  Walker asserts that without this misstatement, the search of Taylor's apartment was not supported by probable cause. (D.N. 1, PageID # 12)  Walker further contends that the entirety of Jaynes's affidavit should be treated as materially false because Chief Gentry terminated Jaynes for what she described as "a sustained untruthfulness violation based on information [Jaynes] included in [the] affidavit." (*Id.*, PageID # 11–12; *see* D.N. 35, PageID 628)  Jaynes maintains that he is entitled to qualified immunity under the standard articulated in *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986), because a "reasonable" officer in his position "could have believed that probable cause existed to search" Taylor's apartment.  (D.N. 29-1, PageID # 343–44)  He asserts that he did not knowingly lie in his affidavit, stating that Mattingly told him that a Postal Inspector verified that Glover's

packages were delivered to Taylor's apartment.  (D.N. 37, PageID # 660–61)  Jaynes also argues that even if he did knowingly lie in Paragraph 9, the remainder of the affidavit established probable cause to search Taylor's apartment.  (D.N. 29-1, PageID # 333–45)

Construing the complaint in the light most favorable to Walker, *Hart*, 973 F.3d at 635, the Court finds that Walker has plausibly alleged that Jaynes submitted his affidavit to the judge with knowledge that Paragraph 9 was false.  (D.N. 1, PageID # 26–27)  Walker claims that Jaynes stated that he personally verified through Shively PD that the United States Postal Inspection Service confirmed that Glover had been receiving packages at Taylor's apartment, though Jaynes never spoke to Shively PD.  (*Id.*, PageID # 10)  Moreover, Walker alleges that Jaynes contacted Shively PD a month after the search of Taylor's apartment and asked if Glover had received packages at Taylor's address.  (*Id.*)  Walker's allegation is further supported by Chief Gentry's statements, set out in the complaint, regarding Jaynes's termination for "a sustained untruthfulness violation."  (*See id.*, PageID # 11–12)  Jaynes's discussion of *Malley* is inapt. (D.N. 29-1, PageID # 343 (citing *Malley*, 475 U.S. at 344–45))  The officer in *Malley* believed that the facts in his warrant affidavit were true and was mistaken that they were sufficient to establish probable cause, 475 U.S. at 344–45, whereas Walker alleges that Jaynes deliberately lied in his warrant affidavit.  (*See* D.N. 1, PageID # 11, 26–27)

As Walker accurately notes (D.N. 35, PageID # 625–26 (citing *Franks*, 438 U.S. at 164)), it is clearly established that an officer violates the Fourth Amendment when he knowingly submits materially false information in a warrant affidavit.  *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).  Walker alleges that Jaynes deliberately lied in Paragraph 9, which was a material statement linking Glover to Taylor's apartment and thus Taylor's apartment to illegal activity. *See Wesley v. Campbell*, 779 F.3d 421, 433.  The Court thus cannot conclude at this early stage

that Jaynes is entitled to qualified immunity.  *See Hill*, 884 F.2d at 275; *cf. Wesley*, 779 F.3d at 433 (denying qualified immunity at motion-to-dismiss stage when plaintiff plausibly alleged that he was arrested without probable cause based on an arrest warrant that "contained omissions that were 'deliberate . . . or showed reckless disregard for the truth' and were 'material to the finding of probable cause'" (alteration in original) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006))).

### b.    Jonathan Mattingly and Michael Nobles

Walker alleges that Mattingly and Nobles separately asked the Shively PD to contact the local office of the United States Postal Inspection Service about Glover's packages.  (D.N. 1, PageID # 26–27)  Walker further claims that the Shively PD then told Mattingly and Nobles that a Postal Inspector denied that any packages for Glover were delivered to Taylor's residence.  (*Id.*)  Walker's complaint alleges that Mattingly nevertheless "conveyed to Defendant Jaynes that the US Postal Inspector had verified that [Glover] was receiving packages at Ms. Taylor's home."  (*Id.*, PageID # 27)  Mattingly maintains that he told Jaynes there were no packages for Glover sent to Taylor's apartment (D.N. 30-1, PageID # 380–81), while Jaynes claims that Mattingly told him packages for Glover were sent to Taylor's apartment.  (D.N. 29-1, PageID # 318)

Mattingly, like Jaynes, argues that the warrant was supported by probable cause even without Paragraph 9.  (D.N. 30-1, PageID # 383)  But as explained above, Paragraph 9 was material to the probable cause finding.  *See Hill*, 884 F.2d at 275.  Mattingly further asserts that existing precedent did not clearly establish that his "minimal role" as a non-affiant in securing the warrant was a constitutional violation.  (D.N. 30-1, PageID # 382, 384 (citing *Wheeler v. City of Lansing*, 660 F.3d 931, 942 (6th Cir. 2011)))  Similarly, Nobles contends that he was not

involved in securing the search warrant and thus cannot be held liable for any unreasonable search.  (D.N. 40, PageID # 694)

A non-affiant may be liable for an affiant's falsehoods if the non-affiant "played a major role in preparing the affidavit" and "it would be apparent to a reasonable officer" that the warrant was constitutionally deficient.  *Wheeler*, 660 F.3d at 942.  In *Wheeler*, the Sixth Circuit denied a non-affiant officer qualified immunity when he was involved in the investigation to procure the warrant even though he did not execute the warrant.  *Id.* at 942–43.  Similarly, Walker has plausibly alleged that Mattingly and Nobles played a major role in the investigation by speaking to Shively PD about Glover's packages and then executing the search warrant.  (D.N. 1, PageID # 26–30)  Under *Wheeler*, Walker's allegation that Mattingly and Nobles spoke to Shively PD is sufficient to deny them qualified immunity at this stage as to Count I.  *See* 660 F.3d at 942–43.

c.    **Kelly Goodlett, Jerry Huckelberry, Luke Phan, and Kimberly Burbrink**

Like Mattingly and Nobles, Goodlett asked Shively PD to inquire with the United States Postal Inspection Service about Glover's packages, and Shively PD told Goodlett that no packages for Glover were sent to Taylor's address.  (D.N. 1, PageID # 26–27)  Nevertheless, Goodlett, as a supervisory officer, either approved Jaynes's affidavit or, contrary to LMPD policy, failed to review the affidavit before Jaynes submitted it to a judge.  (*Id.*, PageID # 8, 27–28)  Walker does not allege that Huckelberry, Phan, and Burbrink gathered information in support of the affidavit but does claim that they were supervisory officers who failed to review Jaynes's affidavit before he submitted it to the judge.  (*Id.*, PageID # 8, 28–29)  Goodlett, Huckelberry, Phan, and Burbrink argue that qualified immunity protects them from liability for Jaynes's improper actions.  (D.N. 40, PageID # 694)

A plaintiff plausibly alleges supervisory liability for another's offense if the plaintiff asserts that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer[]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) (internal quotation marks omitted). This liability "requires more than negligence or recklessness." *Crawford*, 15 F.4th at 761 (citing *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020)). There must also be a "causal connection" between the supervisor's "wrongful conduct and the violation alleged." *Peatross*, 818 F.3d at 242.

Walker has plausibly alleged that Goodlett at least "knowingly acquiesced" in Jaynes's unconstitutional conduct. *Id.* Walker claims that Goodlett knew Glover's packages were not sent to Taylor's address, yet either approved Jaynes's affidavit or failed to review the affidavit, in violation of LMPD policy. (D.N. 1, PageID # 26–28) Thus, Walker has put forth sufficient factual allegations that Goodlett knew Jaynes's affidavit was false and, at a minimum, knowingly acquiesced in its submission, which caused an invalid warrant to issue. *See* 818 F.3d at 242.

Walker fails to plausibly allege supervisory liability for Huckelberry, Phan, and Burbrink, however. Walker asserts only that these defendants "violated their duty to conduct a good faith review of Defendant Jaynes' affidavit" and "knew or [were] reckless in failing to know" that Jaynes's affidavit was false. (D.N. 1, PageID # 27–28) This conclusory allegation is inadequate and contrasts with Walker's claims against Goodlett, which describe with specificity that Goodlett's knowledge stemmed from her conversation with Shively PD. (*Id.*, PageID # 26–28); *Crawford*, 15 F.4th at 765–67 (affirming grant of qualified immunity and dismissal under 12(b)(6) when plaintiff offered only "conclusory" allegations that a supervisor knew subordinate officers violated decedent's constitutional rights and did not offer any facts that indicated it was

"plausible" the supervisor knew of the violations).  Therefore, Huckelberry, Phan, and Burbrink are entitled to qualified immunity, and their motions to dismiss will be granted, while Goodlett's will be denied.  *See Crawford*, 15 F.4th at 765–67; *Peatross*, 818 F.3d at 242.

### 2.    Count II: Failure to Announce

The Fourth Amendment generally requires officers executing a search warrant to "knock and announce that they are seeking entry into a home and then wait a reasonable amount of time before entering."  *Greer v. City of Highland Park*, 884 F.3d 310, 315 (6th Cir. 2018) (citing *United States v. Spikes*, 158 F.3d 913, 925–26 (6th Cir. 1998)).  While "the potential presence of drugs 'lessens the length of time law enforcement must ordinarily wait outside before entering a residence,' it does not justify abandonment of the knock-and-announce rule."  *Id.* (quoting *Spikes*, 158 F.3d at 926).  And nighttime searches are "more intrusive than searches conducted during the day," requiring a longer waiting time before officers may enter.   *Id.* at 317 (quoting *Yanez-Marquez v. Lynch*, 789 F.3d 434, 465 (4th Cir. 2015)) (internal quotation marks omitted).

"[I]t is clearly established law that the [F]ourth [A]mendment forbids the unannounced, forcible entry of a dwelling absent exigent circumstances."  *Id.* at 316–17 (alterations in original) (quoting *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991)) (internal quotation marks omitted). "Exigent circumstances may include the following situations: '(1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the officer's authority and purpose.'"  *Id.* at 317 (quoting *United States v. Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002)).

Walker claims that Hankison, Mattingly, Cosgrove, Hoover, James, Nobles, and Campbell violated the knock-and-announce requirement by failing to announce before entering

Taylor's apartment, although he concedes that the officers knocked. (D.N. 1, PageID # 5, 30–31) Mattingly and Cosgrove argue that they are entitled to qualified immunity because they announced and had a valid no-knock warrant, which permitted their entry without knocking and announcing. (D.N. 30-1, PageID # 384–85; D.N. 39, PageID # 678–80) Hoover, James, Nobles, and Campbell contend that they "were not present at the scene when the events took place." (D.N. 31-1, PageID # 484–85)

Walker has plausibly alleged that the officers failed to announce when executing the warrant. (*See* D.N. 1, PageID # 30–31) Despite Taylor asking the individuals knocking to identify themselves, the officers failed to respond or otherwise announce their presence. (*Id.*, PageID # 31) Walker has also plausibly alleged that the officers listed in his complaint, including Mattingly, Cosgrove, Hoover, James, Nobles, and Campbell, were part of the entry team executing the warrant (*see id.*, PageID # 30), and members of an entry team can be liable for a failure to knock and announce. *See Thornton v. Fray*, 429 F. App'x 504, 510–11 (6th Cir. 2011).

Whether the officers acted reasonably under the totality of the circumstances in anticipating exigent circumstances is a question of fact. *See Greer*, 884 F.3d at 317–18. Neither "the presence of drugs alone" nor the mere possibility of evidence destruction vitiates the knock-and-announce requirement. *Id.* at 317. Moreover, the issuance of a no-knock warrant does not end the reasonableness inquiry. *United States v. Johnson*, 267 F.3d 498, 500 (6th Cir. 2001); *see United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) ("[O]fficers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence.").

As set forth in Walker's complaint, the officers did not anticipate exigent circumstances when they executed the warrant because they planned to knock and announce, believing that

Taylor, who had no criminal history, would be home alone and that her residence was "a soft target." (D.N. 1, PageID # 13)  Because Walker plausibly alleges that there were no exigent circumstances justifying the officers' failure to announce, the defendants' motions to dismiss must be denied as to Count II. *See Greer*, 884 F.3d at 317–18 (affirming denial of motion to dismiss when plaintiffs plausibly alleged that "exigent circumstances did not excuse the officers' disregard of the knock-and-announce rule").

### 3.      Count III: Excessive Force

"[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Thornton v. City of Columbus*, 727 F. App'x 829, 386 (6th Cir. 2018) (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)) (internal quotation marks omitted). "An officer's use of force is excessive if, under the totality of the circumstances, the force was objectively unreasonable." *Moore v. City of Memphis*, 853 F.3d 866, 870 (6th Cir. 2017) (citing *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007)).  Because this standard "requires careful attention to the facts and circumstances of each particular case," *Graham v. Connor*, 490 U.S. 386, 396 (1989), it is a "fact intensive-inquiry" and thus one in which it is "generally inappropriate" for a court to grant qualified immunity at the motion-to-dismiss stage. *Jones v. Louisville/Jefferson Cty. Metro Gov't*, 482 F. Supp. 3d 584, 594 (W.D. Ky. 2020) (quoting *Wesley*, 779 F.3d at 433).

#### a.      Jonathan Mattingly and Myles Cosgrove

Walker claims that the officers, who were in plain clothes, failed to announce when they entered Taylor's apartment and thus created a dangerous situation that led to his single shot at the officers. (D.N. 1, PageID # 33)  Walker further alleges that Mattingly and Cosgrove returned fire at Taylor and Walker, despite Cosgrove's inability to clearly see them. (*Id.*, PageID # 16, 33)

Walker distinguishes the officers' failure to announce upon entry from their failure to announce when they knocked.  (*Id.*, PageID # 33)

The Sixth Circuit has stated that "where 'the events preceding the shooting occurred in close temporal proximity to the shooting, those events have been considered in analyzing whether excessive force was used.'"  *Richards v. City of Jackson*, 788 F. App'x 324, 334–35 (6th Cir. 2019) (quoting *Bletz v. Gribble*, 641 F.3d 743, 750–52 (6th Cir. 2011) (collecting cases)) (considering officer's unlawful entry when it preceded the shooting by seventeen seconds and denying defendants' motion for summary judgment).  Mattingly and Cosgrove, citing *Chappell v. City of Cleveland*, 585 F.3d 901, 914 (6th Cir. 2009), argue that their decisions upon entry are "irrelevant" to the excessive-force analysis, making their return of fire reasonable and entitling them to qualified immunity.  (D.N. 30-1, PageID # 386)  Yet their reliance on *Chappell* is misplaced.  *See* 585 F.3d at 909–10.  In *Chappell*, the court did not consider the officers' unlawful entry because the entry did not happen simultaneously with or mere moments before the shooting, as it did here.  *Id.*  Rather, the excessive-force claim stemmed from the officers' entry into an upstairs bedroom after their entry into the residence from the downstairs front door.  *Id.* (stating that "any fact issues relating to the issuance of the warrant and initial entry into the Chappell residence [we]re immaterial" to the excessive-force claim).  And notably, *Chappell* involved a motion for summary judgment, not a motion to dismiss for failure to state a claim.  *See id.*

The Court acknowledges that "[a] different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure."  *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1544 (2017).  But Walker alleges a failure-to-knock-and-announce claim separate from the excessive-force claim, which stems from the officers' failure to announce *upon* entry.  (D.N. 1, PageID # 33)  Here, the officers' failure to announce upon entry occurred

28

either simultaneously with or mere seconds before the shooting. (*Id.*, PageID # 15–16, 33)  Under the facts alleged, whether Mattingly and Cosgrove acted reasonably and thus are entitled to qualified immunity cannot be resolved at the motion-to-dismiss stage. *See, e.g.*, *Bell v. Korkis*, 537 F. Supp. 3d 936, 943–44 (E.D. Mich. 2021) (denying officers qualified immunity on their motion to dismiss plaintiff's excessive-force claim); *Jones*, 482 F. Supp. 3d at 593–94 (denying officers qualified immunity on their motion to dismiss plaintiffs' excessive-force claim).

In reaching this conclusion, the Court heeds the Sixth Circuit's admonition against "'resolv[ing] a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Hart*, 973 F.3d at 635 (citing *Singleton*, 843 F.3d at 242).  "Although an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12." *Id.* (quoting *Wesley*, 779 F.3d at 433–34); *see Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 660 (6th Cir. May 12, 2021) (quoting *Wesley*, 779 F.3d at 433–34).

Notably, Mattingly and Cosgrove have cited no Sixth Circuit case where the court granted a 12(b)(6) motion to dismiss on an excessive-force claim based on qualified immunity when the defendants were accused of discharging a firearm at the plaintiff.  (*See* D.N. 30-1; D.N. 39)  As the Supreme Court has instructed, the Court must confine itself "to 'the situation [the officers] confronted,' carefully considering the 'particular factual context[]' at issue." *Hart*, 973 F.3d at 642 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).  "Absent any factual development beyond the allegations in a complaint," it is difficult for courts to tell "whether a case is 'obvious' or 'squarely governed' by precedent," as required when a defendant asserts qualified immunity. *Id.* (quoting *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 235 (6th Cir.

29

2005) (Sutton, J., concurring)) (internal quotation marks omitted).   Here, additional factual development is necessary to determine whether Mattingly and Cosgrove are entitled to qualified immunity.  *See id.*; *Moderwell*, 997 F.3d at 662 (affirming denial of qualified immunity on 12(c) motion, noting that the plaintiff "must be provided the opportunity to develop the factual record" to allow the court "[t]o understand 'the "facts and circumstances of [the] particular case,"' and decide whether the officer used objectively unreasonable excessive force (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))).   Because Walker has plausibly alleged that Mattingly and Cosgrove used unreasonable and excessive force, the Court must deny their motion to dismiss as to Count III.  *See Moderwell*, 997 F.3d at 662; *Hart*, 973 F.3d at 642.

### b.      Shawn Hoover, Michael Campbell, Tony James, and Michael Nobles

Walker asserts that Hoover, James, Nobles, and Campbell should be held liable for failing to identify themselves upon entry and for failing to intervene when Mattingly, Hankison, and Cosgrove shot at him.  (D.N. 1, PageID # 16, 32–34; *see* D.N. 35, PageID # 648–49 (citing *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019); *Kulpa v. Cantea*, 708 F. App'x 846, 854 (6th Cir. 2017)))   Walker does not claim that Hoover, James, Nobles, and Campbell discharged their firearms.  (*See* D.N. 1)   Therefore, Walker's excessive-force claim against these defendants depends on their failure to intervene when other officers shot at him.  *See, e.g.*, *Casey v. Sanders*, No. 7:17-CV-145-KKC, 2018 WL 3078758, at *5–6 (E.D. Ky. June 21, 2018).

Hoover, James, Nobles, and Campbell argue that they "did not discharge[] their weapons" and thus cannot be found liable for the other officers' alleged use of excessive force.  (D.N. 40, PageID # 689)   These defendants, however, fail to address their alleged failure to intervene.  (*See id.*; D.N. 31-1)   And contrary to their assertion, they can be held liable for other officers' use of excessive force if they "(1) 'observed or had reason to know that excessive force would be or was

being used, and (2) . . . had both the opportunity and the means to prevent the harm from occurring.'" *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (alteration in original) (quoting *Turner*, 119 F.3d at 429). The Court will therefore deny their motion to dismiss as to Count III. *See Taylor v. City of Saginaw*, 922 F.3d 328, 331–32 (6th Cir. 2019) ("The defendant has the burden of showing that the plaintiff has failed to state a [plausible] claim for relief." (quoting *Directv, Inc., v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007))).

### III.

Taking all facts in the complaint as true, as the Court is required to do at this stage, the Court finds that Walker has plausibly alleged that Jaynes, Mattingly, Goodlett, and Nobles obtained a warrant to search Taylor's apartment that was invalid. Huckelberry, Phan, and Burbrink, however, are entitled to qualified immunity for the constitutionally defective warrant. Walker has also plausibly alleged that Mattingly, Cosgrove, Hoover, James, Nobles, Campbell, and Hankison[4] failed to announce before entering Taylor's apartment and that Mattingly and Cosgrove used unreasonable and excessive force against him. Because Hoover, James, Nobles, and Campbell do not address Walker's allegation that they failed to intervene when the other officers allegedly used excessive force, this claim against them also survives. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendant Hankison's motion to dismiss (D.N. 27-1) is **DENIED**.

(2)     Defendant Jaynes's motion to dismiss (D.N. 29-1) is **DENIED**.

(3)     The motion to dismiss of Defendants Mattingly and Cosgrove (D.N. 30-1) is **DENIED**.

---

[4] Hankison did not move to dismiss based on qualified immunity. (*See* D.N. 27-1)

(4)      The Metro defendants' motion to dismiss (D.N. 31-1) is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to Defendants Huckelberry, Phan, and Burbrink on Count I.  It is **DENIED** as to Goodlett on Count I; Hoover, James, Nobles, and Campbell on Counts II and III; and Louisville/Jefferson County Metro Government on Count IV.  The Clerk of Court is **DIRECTED** to terminate Lieutenant Jerry Huckelberry, Sergeant Luke Phan, and Major Kimberly Burbrink as defendants in the record of this matter.

February 1, 2022

**David J. Hale, Judge**
**United States District Court**